CITY OF TORRINGTON *v.* ZONING COMMISSION
OF THE TOWN OF HARWINTON ET AL.
(SC 16589)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

---

Argued March 11—officially released October 15, 2002

*Randall S. McHugh*, with whom was *Jennifer R. Simboski*, for the appellant (plaintiff).

*Michael D. Rybak*, for the appellee (named defendant).

*Robert A. D'Andrea*, for the appellees (defendant Anthony D'Andrea et al.).

BORDEN, J. The dispositive issue in this certified appeal is whether the plaintiff, in 1998, was entitled to attack collaterally a certain stipulated judgment rendered by the trial court in 1991. We conclude that the plaintiff was not so entitled and, accordingly, we affirm the judgment of the Appellate Court.

The plaintiff, the city of Torrington, appealed to the trial court from a decision by the named defendant, the zoning commission of the town of Harwinton (Harwinton commission), granting the application of the defendant Jerry Saglimbeni for a special permit and site plan approval for the construction of a residential community complex on property owned by the defendants Anthony D'Andrea and Robert D'Andrea (D'Andreas). The trial court, *Wiese, J.*, dismissed the plaintiff's appeal. Following a grant of certification to appeal by the Appellate Court, that court affirmed the judgment of the trial court. *Torrington* v. *Zoning Commission*, 63 Conn. App. 776, 793, 778 A.2d 1027 (2001). Following our grant of certification to appeal,[1] the plaintiff appealed to this court.

The record establishes the following facts and procedural history. The property in question owned by the D'Andreas consists of approximately 10.8 acres situated in the northwesterly corner of Harwinton, adjacent to that town's boundary with the plaintiff. The property

---

[1] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that a stipulated judgment in a zone change appeal modified the regulations applicable to a subsequent special use and site plan application?" *Torrington* v. *Zoning Commission*, 258 Conn. 907, 782 A.2d 1242 (2001). Despite the formulation of this question, we have determined, as we explain in the text of this opinion, that the appeal is more appropriately analyzed under the rubric of the defendants' alternate ground for affirmance, namely, whether, on the record demonstrated by the present case, the plaintiff was entitled to mount a collateral attack on the stipulated judgment in question.

has frontage on streets located in both municipalities, as well as public sewer service available from Harwinton and water service available from the plaintiff. In 1988, the D'Andreas applied to the Harwinton commission to rezone the property from a town residential zone, which permitted single-family lots of no less than 65,000 square feet, to a planned multifamily zone, which permitted multifamily dwellings and condominiums, by special permit, on lots of five acres or more, and allowed for up to six dwellings per acre for lots served by public sewer and water, as was the D'Andreas' property. Thus, under the planned multifamily zone, sixty units would be permissible on the property in question.

On September 13, 1988, the Harwinton commission notified the Torrington planning and zoning commission (Torrington commission) of the proposed zone change, and the Torrington commission, on October 12, 1988, voted "to notify the Town of Harwinton that [it] had no objection to the approval of this zone change by the Town of Harwinton." Subsequently, however, the D'Andreas withdrew their Harwinton zone change application and applied, instead, to the Torrington commission for approval of a twenty-eight lot subdivision of their adjoining Torrington property.

In August, 1989, the Torrington commission approved the D'Andreas' subdivision application, known as Doolittle Heights Section III, including an extension of Torrington streets and public utilities to the Torrington-Harwinton town line and to the Harwinton property in question. As a condition of this approval, however, the D'Andreas were required to record, and did record, a restrictive covenant on the property in question requiring the engineering department of Torrington to approve any public or private access from the Harwinton property in question to any Torrington public street.

Shortly thereafter, on November 27, 1989, the D'Andreas reapplied to the Harwinton commission to rezone

the property in question from town residential to planned multifamily. The Harwinton commission denied that application, and the D'Andreas appealed from that decision to the Superior Court. In the course of that appeal, the parties explored the possibility of a settlement. Because it was aware of the restrictive covenant, on September 11, 1990, the Harwinton commission inquired of the Torrington engineering department: "To help us in our deliberations, we would appreciate it if you could advise us as to the feasibility of gaining road access to the property from the Torrington side." The Torrington corporation counsel replied: "As an abutting property owner, the D'Andreas have the right to access their Harwinton property on the existing Torrington road which abuts the property, i.e., Torcon Drive or any future road in the Doolittle Heights section which abuts their property. The only requirement would be that any access road, whether public or private, meet the City of Torrington Engineering Department specifications."

Meanwhile, the Harwinton commission had repealed the planned multifamily regulations, and had adopted more restrictive regulations, which are currently in effect, for a multifamily floating zone, known as the planned residential zone. That repeal and adoption obviously raised the stakes involved in the pending appeal: if the D'Andreas were to prevail, arguably they would then be entitled to develop the property more intensively than the new regulations would permit; and if the Harwinton commission were to prevail, arguably the D'Andreas would be more restricted in their development of the property than had been the case when they filed their application.

The D'Andreas and the Harwinton commission ultimately, in early 1991, proposed to settle the appeal by way of a stipulated judgment. This mutual decision was motivated by both parties' uncertainty as to the out-

come of the appeal if left to resolution by the court. As part of the stipulated judgment, the D'Andreas and the Harwinton commission agreed that the D'Andreas' application would be granted, subject to four conditions, each of which was preceded by the caveat, "[n]otwithstanding any provisions to the contrary contained in the [z]oning [r]egulations . . . ." Those four conditions were that: (1) the project would have a density of thirty-six units with two bedrooms each, limited to no more than four single-family units per structure; (2) the D'Andreas would be permitted to file a single application for the entire thirty-six units, and the Harwinton commission "agrees to permit the construction of 36 single family units" on the property; (3) the Harwinton commission acknowledged that the property had adequate "usable" area, as that term was defined in § 4.7.4 (c) of the Harwinton zoning regulations, for thirty-six single-family units; and (4) the Harwinton commission acknowledged that the property had adequate road access through Torrington, Harwinton, or a combination of the two as determined by the Harwinton commission.[2]

Thereafter, the court, *Susco, J.*, held a hearing pursuant to General Statutes § 8-8 (m)[3] and approved the

[2] In addition, the stipulated judgment contained nine other conditions addressing such subjects as the private nature of the roads within the project, storm water drainage, open spaces, and proposed changes to public roads within the project.

[3] General Statutes § 8-8 (m), which deals generally with appeals from the decisions of zoning commissions, planning commissions, or a combination of the two, provides: "No appeal taken under subsection (b) of this section shall be withdrawn and no settlement between the parties to any such appeal shall be effective unless and until a hearing has been held before the Superior Court and such court has approved such proposed withdrawal or settlement."

General Statutes § 8-8 (b) provides: "Except as provided in subsections (c), (d) and (q) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of

stipulated judgment, including the four conditions previously described. Despite having had full notice of the D'Andreas' Harwinton zone change application,[4] neither the plaintiff nor the Torrington commission sought either to intervene or to participate in the appeal or hearing approving the stipulated judgment. Indeed, thereafter, on September 23, 1991, the D'Andreas secured approval from the Torrington engineering department for access to the Harwinton property from Torrington streets, as was required by the restrictive covenant that had been granted previously to the plaintiff in connection with the development of the D'Andreas' Torrington property. This undisputed history brings us to the present proceeding.

On April 27, 1998, more than seven years after the D'Andreas and the Harwinton commission had entered into the stipulated judgment, the defendant Jerry Saglimbeni applied to the Harwinton commission for a special permit and site plan approval of a thirty-six unit residential condominium community on the property in question, submitting alternate site plans. One site plan showed unrestricted access from both Torrington and Harwinton, and another showed proposed gated access from Torrington and unrestricted access from Harwinton. Having received the required statutory notice of the application pursuant to General Statutes § 8-3h,[5] the Torrington commission notified the Harwin-

the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court."

[4] It is undisputed that the Torrington city clerk was given actual notice of the zone change application pursuant to General Statutes § 8-3h. Notice also could be imputed to the plaintiff by virtue of the defendants' correspondence with the Torrington commission, and the Torrington corporation counsel and engineering department regarding certain components of the application itself.

[5] General Statutes § 8-3h provides in relevant part: "The zoning commission of any municipality shall notify the clerk of any adjoining municipality of the pendency of any application, petition, request or plan concerning any project on any site in which: (1) Any portion of the property affected by a

ton commission that it was now opposed to any access to the project from any Torrington street. After an extended hearing, at which the plaintiff's special counsel appeared on its behalf, the Harwinton commission approved the application, reasoning that: (1) "[it] meets the regulations, as modified by the [stipulated] judgment"; and (2) the proposed development would have no adverse effect on the "health, safety and welfare of the citizens of Harwinton." The Harwinton commission's approval, however, was subject to nineteen conditions, including that Saglimbeni secure final approval from both the Torrington engineering department and the Harwinton water pollution control authority.

The plaintiff appealed from the decision of the Harwinton commission to the Superior Court, which dismissed the appeal, thereby affirming the Harwinton commission's approval of Saglimbeni's application. The plaintiff then appealed to the Appellate Court, which affirmed the judgment of the trial court, reasoning that the terms of the stipulated judgment were binding on the parties. *Torrington* v. *Zoning Commission*, supra, 63 Conn. App. 793. This certified appeal followed.

The plaintiff does not challenge the assertion that a planning and zoning commission may settle an appeal through a stipulated judgment. The plaintiff argues, however, that: (1) a special use permit, as is involved in the present case, must satisfy all of the local zoning regulations; (2) a zoning commission statutorily may not amend local zoning regulations of general applica-

decision of such zoning commission is within five hundred feet of the boundary of the adjoining municipality; (2) a significant portion of the traffic to the completed project on the site will use streets within the adjoining municipality to enter or exit the site; (3) a significant portion of the sewer or water drainage from the project on the site will flow through and significantly impact the drainage or sewerage system within the adjoining municipality; or (4) water runoff from the improved site will impact streets or other municipal or private property within the adjoining municipality. . . ."

bility without holding a public hearing thereon, and may not vary such regulations as to any particular parcel because that power is statutorily allocated to the zoning board of appeals;[6] and (3) therefore, the Harwinton commission had no authority to amend or vary Harwinton's special permit regulations by way of the stipulated judgment. Consequently, the plaintiff contends, it was not bound by the stipulated judgment, and the Appellate Court improperly concluded to the contrary.

The defendants do not challenge the assertion that the effect of the stipulated judgment was to vary in some degree the zoning regulations applicable to the property. They claim, however, that: (1) the Appellate Court properly concluded that the stipulated judgment validly accomplished that end; and (2) as an alternate ground for affirmance of the Appellate Court's judgment, the plaintiff may not now collaterally attack the stipulated judgment. We agree with the defendants' alternate ground for affirmance.

In *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 102, 616 A.2d 793 (1992), we reaffirmed and applied the general rule that one may not institute a collateral action challenging the decision of a zoning authority. We stated that the rule requiring interested parties to challenge zoning decisions in a timely manner "rest[s] in large part . . . on the need for stability in land use planning and the need for justified reliance by all interested parties—the interested property owner, any interested neighbors and the town—on the decisions of the zoning authorities." Id., 102. We also noted, however,

---

[6] It is clear from this record that, to the extent that the stipulated judgment entered into by the Harwinton commission affected the local zoning regulations, it did so only with respect to this particular parcel, and did not purport to amend the regulations generally. We therefore consider the plaintiff's argument to be that the Harwinton commission illegally exercised the statutory power of the zoning board of appeals to vary the zoning regulations with respect to the particular parcel.

in dictum, that, to the extent that a party seeks to attack collaterally a previously unchallenged zoning decision on the basis of the zoning authority's lack of subject matter jurisdiction, "there may be exceptional cases in which a previously unchallenged condition was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it, or in which the continued maintenance of a previously unchallenged condition would violate some strong public policy. It may be that in such a case a collateral attack on such a condition should be permitted." Id., 104–105.

As our language in *Upjohn Co.* indicates, it must be an "exceptional [case]" that will justify disturbing the stability of unchallenged land use decisions. Id., 104. It is not enough that the conduct in question was in violation of the applicable zoning statutes or regulations. It must be shown that the conduct was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it. Thus, a litigant who seeks to invoke this exception must meet a very high standard.

In *Gangemi* v. *Zoning Board of Appeals*, 255 Conn. 143, 150–51, 763 A.2d 1011 (2001), we converted this dictum into a holding, and concluded that the continued maintenance of the previously unchallenged condition at issue in that case violated the strong public policy against restraints on alienation. The present case presents our first occasion to apply the other exception to the general rule prohibiting collateral attacks on zoning decisions, namely, whether the Harwinton commission's exercise of the power to vary the special permit regulations was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it. We conclude that the action of the Harwinton commission

in entering into the stipulated judgment does not meet that very high standard.

In *Upjohn Co.*, we reasserted the need for stability in land use decisions even where the prior decision may have been extrajurisdictional. We stated: "[T]here are limits to the notion that subject matter jurisdictional defects may be raised at any time. As we have only recently observed . . . [t]he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal. . . . Under this rationale, at least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so." (Citations omitted; internal quotation marks omitted.) *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 103–104.

Applying these primary considerations to the facts of the present case, we conclude, first, that the lack of jurisdiction in the Harwinton commission was far from obvious. As a general matter, a zoning commission is empowered to determine whether: (1) the proposed use of the property is permitted under the zoning regulations; (2) the standards contained in the regulations are satisfied; and (3) conditions of approval or modifications to the proposal are necessary to protect public health, safety, convenience and property values, as provided for in General Statutes § 8-2. See *Housatonic Terminal Corp.* v. *Planning & Zoning Board*, 168 Conn. 304, 307, 362 A.2d 1375 (1975). Recent decisions of this court, however, have evidenced a trend toward investing zoning commissions with greater discretion in

determining "whether [a] proposal meets the standards contained in the regulations. The agency [may now] [decide] within prescribed limits whether a particular section of the zoning regulations applies to a given situation and the manner in which it applies." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 33.4, p. 160; see also *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 627–31, 711 A.2d 675 (1998). In making such determinations, moreover, a zoning commission may rely heavily "upon general considerations such as public health, safety and welfare." R. Fuller, supra, p. 164; see also *Irwin* v. *Planning & Zoning Commission*, supra, 627–31. Although these authorities do not stand for the proposition that a zoning commission ordinarily may vary zoning regulations for a particular parcel of property, they nonetheless suggest that it was not entirely obvious that the Harwinton commission's conduct in entering into the stipulated judgment in the present case was outside its purview. Furthermore, it is undisputed that the plaintiff, having had notice of the original zoning proceedings that led to the stipulated judgment, had the opportunity to litigate the question of the Harwinton commission's jurisdiction at that time. The question, therefore, is whether the Harwinton commission's conduct in entering into the stipulated judgment, which varied to some extent the zoning regulations applicable to the property in question, was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it. Three considerations lead us to conclude that it was not.

First, this was not simply a decision by the Harwinton commission to vary the regulations. Rather, the decision to enter into a stipulated judgment served to settle a vigorously contested appeal, with significant stakes for both the Harwinton commission and the property own-

ers. Thus, the stipulated judgment invoked "the powerful interest in the promotion of settlement of litigation by agreement of the parties." *Sendak* v. *Planning & Zoning Commission*, 7 Conn. App. 238, 242, 508 A.2d 781 (1986). Furthermore, it is undisputed that the court approved the stipulated judgment following the required public hearing, and the plaintiff does not contend that the judgment was the product of bad faith, collusion, or other improper conduct. This specific judicial endorsement indicated that the stipulated judgment protected the public interest, was fair, and was not the result of "surreptitious dealing" between the Harwinton commission and the D'Andreas. *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, 247 Conn. 732, 742 n.16, 724 A.2d 1108 (1999) (court approval of settlements involving zoning matters promotes public interest by protecting against unfair or surreptitious dealing between applicants and zoning authorities). Thus, these considerations—the powerful interest in the settlement of litigation, and specific judicial approval of the settlement pursuant to a required public hearing—undermine the assertion that the judgment was so far outside what could be regarded as a valid exercise of zoning power that there could not have been any justified reliance on it.

Second, our examination of the record indicates that, for the most part, the extent to which the stipulated judgment in fact varied the zoning regulations was not so clearly outside the zoning power as to preclude any justified reliance, and that any significant variations were rendered moot by the specific conditions imposed by the Harwinton commission on the approval of Saglimbeni's application. In this connection, we note that the plaintiff does not, in its brief to this court, identify in any concrete way how the stipulated judgment varied the zoning regulations, relying solely on a reference to a letter in the record from its attorney to the Harwinton

commission in opposition to Saglimbeni's application and to any reliance on the stipulated judgment. Nonetheless, we have reviewed that letter, and consider its contentions as those of the plaintiff on the question before us in this appeal. We glean from that letter three provisions of the regulations that the stipulated judgment varied.

The first concerns the form of the application and the number of units permitted on the property. Section 4.7.3 of the Harwinton zoning regulations required that "an application for a Special Permit in a [planned residential] Zone shall consist of no more than 30 dwelling units." The stipulated judgment, however, provided that the defendants could "submit a single application for a Special Permit . . . and [the Harwinton commission] agrees to permit the construction of 36 single family units on the [parcel]." Thus, this provision of the stipulated judgment permitted a single application to be filed,[7] six more units than the planned residential regulations would have permitted; but it also must be borne in mind that it reduced from sixty units the number that would have been permitted had the stipulated judgment not been entered into, and had the original appeal been successful and the preexisting regulations applied to the parcel. Under these circumstances, we cannot regard the addition of six units as being so far outside the Harwinton commission's jurisdiction that there could not have been any justified reliance on the stipulated judgment.

The second provision concerned the amount of "usable" area for the thirty-six units. Section 4.7.4 (c) of the Harwinton zoning regulations required a survey, a site plan map and certifications from a licensed profes-

[7] To the extent that the stipulated judgment permitted a single application, rather than multiple applications, we regard the variance as more form than substance.

sional engineer and licensed land surveyor in order to determine whether land is "usable," in terms of inland wetlands, flood hazard areas and excessive slopes. Under this regulation, if the property were served by approved public water and sewer systems, the maximum number of units would be 3.5 per acre, which would equal the thirty-six permitted units. The stipulated judgment acknowledged that the property had adequate "usable" area for thirty-six units. Despite the assertions in the attorney's letter to the contrary, there is nothing in this record to indicate that, when the Harwinton commission acknowledged that the property contained adequate "usable" area, it did not do so on the basis of appropriate maps and surveys. Indeed, it was already familiar with the property from the original zoning proceeding before it. Presumably, that proceeding was based on appropriate maps and surveys. In any event, as the party seeking to invoke the exception to the general rule barring collateral attack on a previously unchallenged land use decision, the plaintiff had the burden to establish that the Harwinton commission made such an acknowledgment without an adequate basis on which to do so. It has not met that burden. We have no reason to presume that the Harwinton commission acknowledged the existence of usable area without an appropriate inquiry based on appropriate documentation. Furthermore, the record indicates that, despite the assertion in the letter to the contrary, the property is served by both public water and sewer service.

The third provision concerned access to the property. Section 4.7.4 (d) (1) of the Harwinton zoning regulations provided that the development have primary access "directly onto a State Highway and . . . more than one point of vehicular access to a State Highway or to Town road, or . . . directly onto a Town road leading to a State Highway where the Town road has a minimum

paved surface width of 22 feet and no grade in excess of 12 [percent] and . . . more than one point of vehicular access to the Town road." The plaintiff claims in the letter that the property "does not access a Town road leading to a state highway and it does not have more than one point of vehicular access to a Town road." The stipulated judgment acknowledged that the property had adequate road access through Torrington, Harwinton, or a combination of the two. To the extent, however, that this provision of the stipulated judgment may have varied the zoning regulation in question, that circumstance was rendered moot by two conditions imposed by the Harwinton commission on Saglimbeni's application approval, which the Harwinton commission noted were being imposed in connection with that provision of the judgment, and pursuant to §§ 4.7.4 (d) and 8.1.1 (b) of the Harwinton zoning regulations, which enumerates standards relating to vehicular access. The first condition was that a certain recommendation of the Harwinton town engineer regarding road alignment for access and safety be incorporated into the plans for the development and be subject to review of the engineer before any road construction. The other condition required Saglimbeni to obtain approval from the plaintiff for access to the property from its streets. Thus, Saglimbeni's required compliance with these two conditions effectively ensures that access to the property will substantially conform to § 4.7.4 (d).

Third, both before, during and after the D'Andreas' 1988–90 proceedings before the Harwinton commission and the Superior Court, the plaintiff specifically approved of the proposed zone change for the Harwinton property in question, and, effectively, granted access to the property from its streets. In September, 1988, the Torrington commission notified the Harwinton commission that it "had no objection to the [zone change] approval" then being sought by the D'Andreas

from the Harwinton commission. Then, in September, 1990, responding to a specific request to the Torrington engineering department by the Harwinton commission for its position regarding access to the Harwinton parcel, the Torrington corporation counsel replied that: "As an abutting property owner, the D'Andreas have the right to access their Harwinton property on the existing Torrington road which abuts the property, i.e., Torcon Drive or any future road in the Doolittle Heights section which abuts their property. The only requirement would be that any access road, whether public or private, meet the City of Torrington Engineering Department specifications." Finally, in September, 1991, months after the stipulated judgment, the Torrington engineering department specifically approved access from Torrington streets to the property in question.

In addition, the origin of the restrictive covenant on the Harwinton property in question is significant. In 1989, the plaintiff, as a condition of its approval of the D'Andreas' Doolittle Heights subdivision, required them to restrict by deed their *Harwinton* property so as to require the approval of the Torrington engineering department for road access from any Torrington street.[8] Thus, the plaintiff secured a valuable property interest from the D'Andreas at that time in connection with the proposed and anticipated development of their properties on both sides of the Harwinton-Torrington town line, which further enabled the plaintiff to be involved directly in the approval of any plan regarding the Harwinton parcel presently at issue.

The question of whether an extrajudicial act of a zoning authority is so far outside the valid exercise of

---

[8] Indeed, one wonders whether it was within the lawful authority of the Torrington commission to require the D'Andreas to burden their *Harwinton* property as a condition of *the plaintiff's* action on their *Torrington* subdivision. This may be the classic case of the pot calling the kettle black.

zoning power that there could not have been any justified reliance on it, necessarily permits, in an appropriate case, some inquiry into the reasons for that reliance. Those reasons demonstrate a reasonable basis for the defendants' reliance on the stipulated judgment in question. It was reasonable for the defendants to presume that the plaintiff would not subsequently break faith with its own previous representations and positions regarding access to the property. It was also reasonable for the defendants to presume that the plaintiff would not seek to retain its own gain from the development process of the adjoining property on its side of the town line, while denying a subsequent, similar development on the Harwinton side that had been specifically burdened at the plaintiff's request in connection with the Torrington development.

The judgment of the Appellate Court is affirmed.

In this opinion NORCOTT and KATZ, Js., concurred.

VERTEFEUILLE, J., with whom, ZARELLA, J., joins, dissenting. I respectfully disagree with the majority's conclusion that the plaintiff, the city of Torrington, may not maintain the present action collaterally challenging the 1991 stipulated judgment because the contested provisions of the judgment were not so far outside the valid authority of the named defendant, the zoning commission of the town of Harwinton (commission), as to make reliance on that judgment unjustified. I conclude that there was an obvious lack of jurisdiction when the commission waived the requirements of its own regulations in clear violation of state law, and, therefore, the plaintiff's collateral attack on the stipulated judgment is proper.

Notwithstanding the general rule prohibiting collateral attacks on the decisions of zoning authorities, this court in *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 104–105, 616 A.2d 793 (1992), recognized "that

there may be exceptional cases in which a previously unchallenged condition was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it . . . ." The issue in the present case is whether the commission's lack of jurisdiction to agree to certain provisions of the stipulated judgment was sufficiently egregious such that reliance on that judgment was unwarranted. Analysis of the applicable regulations and statutes clearly reveals that, in entering into the stipulated judgment, the commission lacked the authority to excuse noncompliance with the requirements of the Harwinton zoning regulations, and, moreover, that in doing so, it acted in blatant disregard of statutory requirements.

It is axiomatic that a special permit application and site plan must conform to the standards set out in the regulations; *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, 222 Conn. 607, 614–15, 610 A.2d 1205 (1992); and if a special permit does not comply with the applicable regulations, the commission cannot approve it. *Weigel* v. *Planning & Zoning Commission*, 160 Conn. 239, 246–47, 278 A.2d 766 (1971); R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 33.4, p. 162. In the present case, the individual defendants, Jerry Saglimbeni, Anthony D'Andrea and Robert D'Andrea (defendants), have conceded that the special permit application and site plan approved by the commission did not meet the requirements of Harwinton's special permit and zoning regulations (regulations). The commission admitted in its brief filed with the trial court that "if the [stipulated] judgment did not modify the zoning regulations as to access, density, usable area, drainage, sewers and open space, then the commission's decision cannot be upheld under the requirements of the zoning regulations alone."

The issue before us, then, is the commission's authority to "modify" or waive the requirements of the regulations. The commission effectively waived three provisions of the regulations in the stipulated judgment. First, the commission agreed that the defendants could "submit a single application for a special permit . . . and [the commission] agrees to permit the construction of [thirty-six] single family units on the [parcel]." This stipulation contravened § 4.7 of the Harwinton zoning regulations, which requires that "an application for a Special Permit in a [planned residential] zone shall consist of no more than [thirty] dwelling units." Second, the commission acknowledged that the parcel had adequate "usable" area to permit construction of thirty-six living units.[1] Usable area is defined by § 4.7.4 (c) of the Harwinton zoning regulations as "land other than . . . regulated inland wetlands and watercourses . . . [and] 50% of all land with a slope in excess of 25% . . . ." Despite the presence of inland wetlands and steep grades on the site, the commission conceded that the site contained sufficient usable land to accommodate

---

[1] Section 4.7.4 (c) of the Harwinton zoning regulations, which defines the term "usable," provides in relevant part: "For the purpose of this section 'usable' area shall be defined as land other than the following areas which shall be shown on a site plan map:

"—*regulated inland wetlands and watercourses* as defined in the Harwinton Inland Wetlands Regulations and shown on the Harwinton Inland Wetlands Map, the boundaries of which shall be located in the field by a certified soil scientist and mapped by a Connecticut licensed surveyor,

"—*100 year flood hazard areas* as defined by the Federal Emergency Management Agency (see Flood Hazard Areas Map on file in the office of the Planning and Zoning Commission), the boundaries of which shall be certified by a Connecticut licensed professional engineer,

"—*land subject to existing easements which prohibit building development*, the boundaries of which shall be certified by a Connecticut licensed professional engineer,

"—*50% of all land with a slope in excess of 25%* as delineated on the site plan map showing topographic contours based upon a field or aerial survey and certified by a Connecticut licensed land surveyor.

"Based upon the above required information the applicant's engineer shall certify the total 'usable' area of land on the site." (Emphasis in original.)

thirty-six living units. Furthermore, there is no evidence in the record that the commission received the required survey, site plan map and certifications from a licensed professional engineer and a licensed land surveyor before determining that there was sufficient "usable" land on the site. Third, the commission provided an acknowledgment that the parcel had "adequate road access . . . either through Torrington, Harwinton or a combination of the two . . . ." This stipulation was in clear breach of § 4.7.4 (d) (1) of the Harwinton zoning regulations, which requires that a development with thirty or more dwellings have access "either . . . directly onto a State Highway and shall have more than one point of vehicular access to a State Highway or Town road, or . . . directly onto a Town road leading to a State Highway . . . and shall have more than one point of vehicular access to the Town road."

These waivers were critical components of the stipulated judgment negotiated between the commission and the other defendants, yet there can be no serious doubt that the commission lacked the authority to grant such waivers. Pursuant to General Statutes (Rev. to 1991) § 8-6,[2] the power to vary the application of zoning regu-

---

[2] General Statutes (Rev. to 1991) § 8-6 provides in relevant part: "The zoning board of appeals shall have the following powers and duties . . . (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed. . . ."

Section 8-6 was amended in 1993, at which time the existing, previously quoted language was designated as subsection (a) and new language was added and designated as subsection (b). See Public Acts 1993, No. 93-385, § 1.

lations falls within the exclusive jurisdiction of the zoning board of appeals. *Langer* v. *Planning & Zoning Commission*, 163 Conn. 453, 457, 313 A.2d 44 (1972) ("the power to vary [zoning regulations] to accommodate practical difficulties and do substantial justice lies exclusively in a [zoning] board of appeals"); R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 22.16, p. 505 ("the exclusive authority to vary the zoning regulations is vested in the zoning board of appeals"). "The zoning commission itself cannot vary the requirements of the special permit or site plan provisions of the zoning regulations." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 15.15, pp. 363–64.

What makes the commission's action in granting these waivers especially egregious is its wholesale disregard of its statutory obligations when it considered the special permit application for the site in question. General Statutes § 8-3c (b)[3] requires that the commission hold a public hearing on an application for a special permit after giving notice to the public of the time and place of the public hearing. In the present case, the commission waived certain requirements of its regula-

---

[3] General Statutes § 8-3c (b) provides in relevant part: "The zoning commission or combined planning and zoning commission of any municipality shall hold a public hearing on an application or request for a special permit or special exception, as provided in section 8-2, and on an application for a special exemption under section 8-2g. The commission shall not render a decision on the application until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the zoning commission shall give due consideration to the report of the inland wetlands agency. Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice, at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before the date of such hearing. In addition to such notice, such zoning commission may, by regulation, provide for notice by mail to persons who are owners of land which is adjacent to the land which is the subject of the hearing. At such hearing any party may appear in person and may be represented by agent or by attorney. . . ."

tions applicable to a special permit for the site without providing the opportunity for the public, including the plaintiff, an abutting property owner, to be heard on the application. Previously, we have emphasized the importance of public hearings, particularly in zoning cases. *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, 247 Conn. 732, 739, 724 A.2d 1108 (1999); *Couch* v. *Zoning Commission*, 141 Conn. 349, 357, 106 A.2d 173 (1954). "Because of the public impact of land use decisions, Connecticut's governing statutory scheme promotes public participation in such decision making, and particularly provides for public hearings with substantial procedural safeguards. . . . [H]earings play an essential role in the scheme of zoning and in its development. . . . They furnish a method of showing to the commission the real effect of the proposed change upon the social and economic life of the community. . . . Hearings likewise provide the necessary forum for those whose properties will be affected by a change to register their approval or disapproval and to state the reasons therefor." (Citations omitted; internal quotation marks omitted.) *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, supra, 739; *Couch* v. *Zoning Commission*, supra, 357. The commission's waiver of several requirements of its regulations without first holding a public hearing was a clear violation of § 8-3c (b).

Section 8-3c (b)[4] further requires that the commission receive a report from the local inland wetlands agency with regard to any special permit application and that the commission give "due consideration" to that report. The site of the proposed development in the present case clearly contained inland wetlands. Yet the commission stipulated that there was sufficient "usable" area, defined as land *exclusive* of wetlands, without obtaining and considering the statutorily required report from the

---

[4] See footnote 3 of this opinion.

local inland wetlands agency. Our legislature clearly has established a strong public policy favoring protection of the inland wetlands of this state. *Aaron* v. *Conservation Commission*, 183 Conn. 532, 542, 441 A.2d 30 (1981). General Statutes § 22a-36 details the legislature's clear concern for the protection of inland wetlands in this state, providing in relevant part: "The inland wetlands and watercourses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the state have been endowed. . . . The preservation and protection of the wetlands and watercourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state. . . ." To effectuate this intent, the legislature has required each municipality to establish an agency to regulate activities affecting wetlands and watercourses within that municipality. See General Statutes § 22a-42. The commission in the present case, however, stipulated that the site contained sufficient "usable" area (exclusive of wetlands) for thirty-six living units without obtaining and considering the statutorily required report of the Harwinton inland wetlands commission.

When the commission entered into the stipulated judgment, it acted in utter disregard of at least two important statutory obligations, one requiring a public hearing to obtain public input on issues raised in the special permit application, and the second requiring consideration of a report from the local inland wetlands agency. General Statutes § 8-3c (b). I conclude that the commission's abdication of its statutory role brings this case within the exception recognized in *Upjohn Co.* for actions so far outside the authority of a zoning commission that those actions could not reasonably have been relied upon.

The majority asserts that the commission's lack of jurisdiction was not obvious because: (1) the waivers were given in the interest of settling litigation; (2) the variations of the regulations were rendered moot by conditions later imposed by the commission when it approved Saglimbeni's application; and (3) the plaintiff gave its approval to the zone change during the application process. These considerations, however, are tangential to the issue before us, namely, whether, by agreeing to waive certain requirements of the zoning regulations and doing so in violation of the procedures mandated in § 8-3c (b), the commission exceeded its authority in such an obvious way that its actions reasonably could not have been relied upon. That question should be resolved by an objective analysis of the commission's legal authority under applicable statutes and regulations at the time it took the action in question. It should not be resolved by considering whether the plaintiff in this zoning appeal approved of the zone change at some earlier stage in the process or whether, years after the action at issue, the commission took other actions that made moot its earlier illegal action that resolved a pending lawsuit. Whether the commission acted egregiously in excess of its authority is a question of law to be resolved by application of an objective standard, e.g., whether an individual possessing reasonable knowledge of zoning law would conclude that the action of the zoning authority was so far in excess of its valid powers that there could not have been any justified reliance on that action. Application of that objective standard in the present case reveals that the commission's lack of jurisdiction was obvious.

Accordingly, I respectfully dissent.