# JEAN-GUY LALLIER *v.* ZONING BOARD OF APPEALS OF THE TOWN OF STAFFORD ET AL.
## (AC 30408)

Bishop, DiPentima and Peters, Js.

Argued October 19, 2009—officially released January 26, 2010

*Edward Muska*, for the appellants (defendants).

*John H. Parks*, for the appellee (plaintiff).

*Opinion*

PETERS, J. This case concerns the authority of a zoning board of appeals to reexamine the merits of an earlier order of a planning and zoning commission that had approved a landowner's plan to improve his property for agricultural purposes by large scale removal of gravel from the property. The trial court upheld the landowner's appeal, filed pursuant to General Statutes § 8-8,[1] from the decision of the zoning board of appeals enforcing a cease and desist order forbidding him from

---

[1] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board . . . may take an appeal to the superior court for the judicial district in which the municipality is located, notwithstanding any right to appeal to a municipal zoning board of appeals . . . ."

pursuing a commercial sale of his gravel, and the zoning enforcement officer, the town and the zoning board of appeals have filed an appeal. They maintain that the court improperly concluded that (1) the underlying approval of the planning and zoning commission could not be collaterally attacked in a cease and desist order and (2) the agricultural operation of the plaintiff's land that was approved by the commission authorized the plaintiff to sell his gravel. We affirm the judgment of the trial court.

On June 13, 2007, the plaintiff, Jean-Guy Lallier, filed an appeal in the Superior Court from a decision of the defendant zoning board of appeals of the town of Stafford (zoning board) upholding a cease and desist order issued by the defendant Wendell Avery, the Stafford zoning enforcement officer, that restrained the plaintiff from removing gravel from his property at 257 Old Monson Road. The court rendered judgment sustaining the plaintiff's appeal. After obtaining certification to appeal, the defendants have appealed to this court.

The court's memorandum of decision recites the undisputed factual and procedural background of the defendants' appeal. On June 13, 2006, the planning and zoning commission of the town of Stafford (zoning commission) unanimously approved the plaintiff's request to remove 200,000 yards of earth material from approximately fourteen acres of his property located at 257 Old Monson Road in order to create hayfields and pastureland. Finding the proposed earth removal to be incidental to an agricultural operation as detailed in the plaintiff's engineer-designed site plan, the zoning commission approved his request without requiring him to apply for a special permit.[2] The only condition

[2] In the course of the discussion before the zoning board, the zoning enforcement officer acknowledged that the zoning commission's June, 2006 decision approving the plaintiff's request was procedurally proper.

attached to the zoning commission's approval was a requirement that the plaintiff obtain permission from the town inland wetlands commission to move the excavated earth material through the designated wetland area of his property.

On November 15, 2006, the plaintiff obtained the required approval from the inland wetlands commission. That commission implicitly permitted him to move earth material through the wetland area of his property by approving his application "to widen his driveway to twenty-four feet to support the truck traffic for removal of 200,000 [yards] of material."

No appeal was filed challenging the actions taken by the zoning commission or the inland wetlands commission granting the plaintiff the right to remove gravel from his property. The plaintiff thereafter expended substantial time and money improving his property to facilitate the removal of gravel.[3]

On April 25, 2007, responding to concerns expressed by the plaintiff's neighbors about the impact of removing 200,000 yards of gravel from the plaintiff's property, the zoning commission decided that "the scope of the work being conducted has changed from an agricultural use to an earth removal operation, and is therefore outside the scope of the original approval." Accordingly, the zoning commission instructed the zoning enforcement officer to issue a cease and desist order to the plaintiff.[4] The plaintiff unsuccessfully appealed from

[3] In the defendants' brief in the trial court, they conceded that "the . . . zoning commission may have acted in such a way as to lead the plaintiff to believe he could remove 200,000 [yards] of material from the property without an earth removal permit. Furthermore, we can concede that he changed his position in reliance therefor." They nonetheless faulted the plaintiff for not having exercised due diligence because he failed to undertake an independent inquiry into the earth removal requirements of the Stafford zoning regulations.

[4] The cease and desist order provided: "(1) The [c]ommission has determined that the increased truck traffic associated with the removal of gravel from your site is hazardous to traffic traveling along the Old Monson [Road]; and

the order of the zoning enforcement officer to the zoning board. On June 7, 2007, without stating the reason for its decision, the zoning board unanimously upheld the cease and desist order. The plaintiff then filed a timely appeal in the Superior Court.

Sustaining the plaintiff's appeal, the court came to two central conclusions adverse to the defendants. The court held that (1) the zoning commission did not have the authority to reconsider the merits of its June 13, 2006, approval of the plaintiff's land use plan once the time for appealing from that approval had expired and (2) the zoning board's decision to affirm the zoning commission's ruling that the plaintiff had exceeded the scope of the authority conferred on him by the original approval was not supported by substantial evidence in the record. The defendants have challenged both rulings. We are not persuaded.[5]

I

LEGALITY OF THE JUNE 13, 2006 ORDER OF THE
ZONING COMMISSION

In their brief to the trial court, the defendants argued that the authority conferred on the plaintiff by the zoning commission's June 13, 2006 approval of his application for the agricultural operation on his property did

"(2) The [c]ommission has further determined that the scope of the work being conducted has changed from an agricultural use to an earth removal operation, and is therefore outside the scope of the original approval.

"Therefore, as a result of the foregoing, I am issuing you this [c]ease and [d]esist [o]rder, and I am hereby ordering you to immediately discontinue the removal of any gravel from your property on Old Monson [Road].

"The [c]ommission has indicated that in order to continue with the removal of any gravel from the property you will have to apply for an earth removal permit. This cease and desist order shall remain in effect until an earth removal permit has been granted by the [c]ommission."

[5] The plaintiff did not file a cross appeal to challenge the court's rulings that were adverse to him. In these rulings, the court rejected the plaintiff's claims that the zoning board (1) was required to state the reasons for its decision on the record, (2) had no authority to issue a cease and desist order in this case and (3) had illegally and arbitrarily applied a different standard to his case than that applied to his neighbors' cases.

not encompass authorization for the commercial sale of his gravel. They argued that the plaintiff could not rely on this approval because (1) the zoning commission should have required the plaintiff to apply for a special use permit, which requires a public hearing and a sign on the premises, and (2) the zoning commission should have found that the plaintiff's proposed use of the property was not "agricultural." The plaintiff argued to the contrary.

The court declined to address the merits of the defendant's attack on the lawfulness of the June 13, 2006 approval. Relying on the undisputed fact that no appeal had been taken from that approval, it stated that "[t]he issue before the court is framed by the cease and desist order issued to the plaintiff . . . ." It noted, furthermore, that, because General Statutes § 8-28[6] requires publication of a zoning commission's decision within fifteen days, the commission "only had fifteen days in which to reconsider its decision . . . [and] could not have legally reconsidered its decision . . . by issuing a cease and desist order approximately ten months later." In the context of this latter statement, the court observed that "[t]here is no evidence in the record concerning the publication of the June 13, 2006 decision . . . ."

In their appeal to this court, the defendants renew their challenges to the validity of the June 13, 2006 decision of the zoning commission. Because these challenges raise questions of law, their claims are entitled to plenary review in this court. *Gibbons* v. *Historic*

---

[6] General Statutes § 8-28 provides: "Notice of all official actions or decisions of a planning commission, not limited to those relating to the approval or denial of subdivision plans, shall be published in a newspaper having a substantial circulation in the municipality within fifteen days after such action or decision. Any appeal from an action or decision of a planning commission shall be taken pursuant to the provision of section 8-8."

*District Commission*, 285 Conn. 755, 761, 941 A.2d 917 (2008).

For two independent reasons, the defendants claim that the merits of the zoning commission's approval of the plaintiff's application are reviewable by this court because that approval was void. They maintain that the decision of the zoning commission may be collaterally attacked because the commission (1) failed to publish its decision in violation of General Statutes § 8-3 (d)[7] and (2) exceeded its statutory authority in rendering its decision. We are not persuaded by either claim.

A

Concededly, numerous Connecticut cases hold that to protect a disaffected party's right of appeal, a zoning commission's failure to publish notice of its decision as required by General Statutes § 8-28 is a jurisdictional defect that makes the commission's decision void. *Wilson* v. *Planning & Zoning Commission*, 260 Conn. 399, 405, 796 A.2d 1187 (2002); *Hyatt* v. *Zoning Board of Appeals*, 163 Conn. 379, 387, 311 A.2d 77 (1972). The defendants argue that those precedents govern this case because, as the court noted in its memorandum of decision, the record does not establish the publication of the zoning commission's June 13, 2006 decision.

The defendants' argument assumes, however, that failure to *publish* notice is established by showing a failure to include a notice of publication *in the return of record*. They cite no authority for this proposition. Indeed, *Cardoza* v. *Zoning Commission*, 211 Conn. 78,

---

[7] General Statutes § 8-3 (d) provides in relevant part: "Zoning regulations or boundaries or changes therein shall become effective at such time as is fixed by the zoning commission, provided a copy of such regulation, boundary or change shall be filed in the office of the town . . . clerk . . . and notice of the decision of such commission shall have been published in a newspaper having a substantial circulation in the municipality before such effective date."

85, 557 A.2d 545 (1989), is directly to the contrary. In *Cardoza*, our Supreme Court, although recognizing the general principle requiring publication of notice, held that "the failure to allege the fact and date of publication is . . . *not* a jurisdictional defect . . . ." (Emphasis added.) Id. In light of that holding, we conclude that the absence from *the record* of a copy of the notice and the date of publication of the commission's decision does not render that decision void.[8]

B

Alternatively, the defendants argue that the court should have addressed the merits of their claim that the June 13, 2006 decision improperly granted the plaintiff a conditional approval of his agricultural plan because, in their view, the zoning commission had no authority to grant such an approval. They cite *Cristofaro* v. *Burlington*, 217 Conn. 103, 584 A.2d 1168 (1991), and *Builders Service Corp.* v. *Planning & Zoning Commission*, 208 Conn. 267, 545 A.2d 530 (1988), for the proposition that Connecticut courts, characterizing such claims as jurisdictional, have authorized an indirect review of their merits in an appeal from a cease and desist order.

The defendants fail to acknowledge, however, that our Supreme Court more recently has held that, as a general rule, litigation about the merits of a cease and desist order does not permit a collateral attack on the validity of the underlying zoning decision that was not challenged at the time that it was made, even if the collateral attack is on jurisdictional grounds. "In *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 102, 616 A.2d 793 (1992), [our Supreme Court] reaffirmed and applied the general rule that one may not

---

[8] No argument of failure to publish the notice of the zoning commission's decision was raised before the trial court. Accordingly, the trial court made no finding as to when and if notice was published. Our appellate review is limited to facts of record. *Solano* v. *Calegari*, 108 Conn. App. 731, 742, 949 A.2d 1257, cert. denied, 289 Conn. 943, 959 A.2d 1010 (2008).

institute a collateral action challenging the decision of a zoning authority. [It] stated that the rule requiring interested parties to challenge zoning decisions in a timely manner rest[s] in large part . . . on the need for stability in land use planning and the need for justified reliance by all interested parties—the interested property owner, any interested neighbors and the town— on the decisions of the zoning authorities." (Internal quotation marks omitted.) *Torrington* v. *Zoning Commission*, 261 Conn. 759, 767, 806 A.2d 1020 (2002). Although our Supreme Court also has noted a collateral attack may be justified in "exceptional cases in which a previously unchallenged condition was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it, or in which the continued maintenance of a previously unchallenged condition would violate some strong public policy," the defendants have not endeavored to make such a showing in this case.[9] (Internal quotation marks omitted.) Id., 768.

In light of these more recent Supreme Court precedents, the trial court in the present case properly declined to address the merits of the defendants' disagreement with the zoning commission's June 13, 2006 approval of the plaintiff's agricultural proposal. It follows that the defendants cannot succeed in their claim that the plaintiff's development of his property was improper, from the outset, because he failed to apply for a special use permit.

II

SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE CEASE AND DESIST ORDER

The defendants' alternate claim for reversal of the judgment of the trial court challenges the propriety of

---

[9] For an example of a case meeting the Supreme Court's "very high standard," see *Gangemi* v. *Zoning Board of Appeals*, 255 Conn. 143, 150–51, 763 A.2d 1011 (2001) (violation of public policy against restraints on alienation).

the court's conclusion that the evidence of record before the zoning board did not support the board's decision that the plaintiff's proposed sale of 200,000 yards of earth material from his property was improper because the plaintiff had expanded the use of his property "in such a manner as to bring it outside the scope of the original approval." We disagree with this claim as well.

Because the zoning board did not articulate the findings on which it based its cease and desist order, the court properly searched the record to ascertain the basis for the board's decision. See *Protect Hamden/ North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 544–45, 600 A.2d 757 (1991). Furthermore, the court properly acknowledged that its review of the board's decision to uphold the cease and desist order was limited to a determination of whether the record contained substantial evidence to support that order. See *Heithaus* v. *Planning & Zoning Commission*, 258 Conn. 205, 223–24, 779 A.2d 750 (2001). Notwithstanding this deferential standard, the court sustained the plaintiff's appeal.

The standard of review for our consideration of a trial court's determination that a zoning board's order had no evidentiary support in the record is well established. Our obligation, like that of the trial court, is "to search the record for a basis upon which to uphold the [zoning board's] decision." *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, supra, 220 Conn. 545.

At the outset, we note that, in their appeal to this court, the defendants have bifurcated their disagreement with the trial court by arguing that the evidence presented to the zoning board demonstrated that the plaintiff improperly (1) was conducting a commercial

earth removal operation without a special use permit and (2) had expanded the use approved by the zoning commission from an agricultural operation to a commercial earth removal operation. We are not persuaded that the record supports such a bifurcation. As the plaintiff reminds us, at the zoning board hearing, the zoning enforcement officer acknowledged that the zoning commission's June 13, 2006 decision determined that "the [plaintiff's] use was an agricultural use and did not require the submittal of a formal site plan application." We agree with the plaintiff that this acknowledgment is inconsistent with the defendants' present claim that the plaintiff was required to submit an application for a special use permit. Like the trial court, we will therefore limit our examination of the factual basis for the plaintiff's appeal to an inquiry into whether the evidence before the zoning board established that the plaintiff had expanded his operation of his property beyond the scope of the agricultural operation that was authorized in 2006.

The court undertook its examination of the record before the zoning board by comparing the terms of the zoning commission's approval of the plaintiff's earth removal request with the evidence of record that was adduced to support the cease and desist order. Without challenging the propriety of the court's inquiry, the defendants challenge the validity of the court's determination that this comparison did not establish a basis for the zoning board's cease and desist order.

The court first noted that the zoning commission's June 13, 2006 approval placed no restrictions on the plaintiff's removal of 200,000 yards of earth material from his property other than requiring him to obtain permission from the inland wetlands commission to move this material through the wetland area of his property and prohibiting him from crushing the material

on site. The site plan clearly indicated the existing gradations in the property and the future gradations to be achieved thereafter. The plan depicted the soil erosion controls to be implemented and the phases of the removal. The inland wetlands commission's subsequent approval expressly authorized the plaintiff's proposal to move these 200,000 yards of earth material through the wetland area of his property. Recognizing the implications of such an extensive removal of earth material, the inland wetlands commission expressly approved the plaintiff's application to widen his driveway by twenty-four feet to support the anticipated truck traffic.[10]

After receiving these regulatory approvals, the plaintiff followed the site plan by installing the requisite soil erosion controls on his property, such as the silt fencing and a retention pond, and by beginning phase one. The plaintiff's conduct was entirely consistent with his avowed intention to remove the earth material from his property to create pastureland for his horses.

The defendants nonetheless maintain that the extent of the plaintiff's gravel removal operations demonstrates that, rather than engaging in an activity incidental to an agricultural operation, the plaintiff was engaged in conducting a commercial earth removal operation for which he did not have the requisite permit.

The defendants cite evidence that the plaintiff had (1) widened his driveway, (2) contracted to sell the removed earth material to a road construction company and (3) applied for a rock crushing permit. However, in light of the wetland commission's express *approval* of the widening of the plaintiff's driveway and the commission's *denial* of the plaintiff's application for a rock

---

[10] The day following this approval, the zoning enforcement officer wrote to the inland wetlands commission to inquire whether this approval "took into consideration the large gravel operation that [the plaintiff] proposed to the . . . [c]ommission." The letter specifically referenced "the 200,000 yards of gravel to be trucked off site through his driveway."

crusher,[11] the centerpiece of the board's case against the plaintiff, at trial and in this appeal, is the proposed sale of the excavated earth materials to a commercial buyer.

Addressing this central issue, the court determined that the plaintiff had not exceeded the scope of the zoning commission's approval by hiring a commercial contractor to perform the removal of the *exact* amount of earth material that had been contemplated from the outset. The defendants cannot complain, and do not argue, that the amount of earth material to be removed from the plaintiff's property exceeded the 200,000 yards originally approved for removal. The court held that the existence of a temporary commercial aspect to the plaintiff's endeavor to create pastureland and hay fields on his property did not by itself indicate that the plaintiff's use had changed from an agricultural earth removal operation incidental to agricultural use to a commercial earth removal operation. See *Viggiano* v. *Cocchiola,* Superior Court, judicial district of Waterbury, Docket Nos. CV-02-0172243 and CV-02-0170152 (September 12, 2002) (holding sale of excavated material to be incidental to excavation allowed pursuant to approved site plan).

The defendants argue nonetheless that, whatever the history of the plaintiff's land use approval might be, the zoning board retained the authority to decide that the scope of the local disruption engendered by the removal of 200,000 yards of material for sale to a commercial contractor was too great to be characterized as an authorized incidental aspect of the plaintiff's agricultural operation. We are not persuaded.

The defendants' analysis founders in this court, as it did in the trial court, on their failure to acknowledge

---

[11] The court observed that there was no evidence that the plaintiff had performed any rock crushing on site.

the scope of the approvals that the plaintiff obtained from the zoning commission and the inland wetlands commission. Those approvals fully disclosed the plaintiff's intent to turn his property into grazing lands for his horses by removing the precise amount of gravel that he now proposes to remove and to sell. To this day, there is no claim that the plaintiff's submissions were in *any* factual respect inaccurate or misleading. There is similarly no claim that either commission, directly or indirectly, limited the manner in which the plaintiff might dispose of his gravel. The defendants have provided no evidentiary support for their implicit contention that removal of this gravel by means of a sale to a commercial buyer is more disruptive to the plaintiff's neighbors than any other form of removal would be.

It may well be that activities with such a potential for adverse community consequences should not have been given blanket approval by the two commissions charged with such oversight. The remedy for improper approvals, if indeed they were improper, was a timely appeal. As the trial court held, the time for that has long passed.

In sum, we affirm the judgment of the trial court that (1) the zoning board did not have the authority to enter a cease and desist order that sought collaterally to challenge the propriety of unappealed approvals obtained by the plaintiff from the zoning commission and the inland wetlands commission and (2) the record before the zoning board did not support its determination that the plaintiff's proposed sale of his gravel to a commercial buyer exceeded the scope of the approvals for the removal of excavated earth material that the plaintiff previously had obtained from the zoning commission and the inland wetlands commission.

The judgment is affirmed.

In this opinion the other judges concurred.